Joseph P. DUGAN, Appellant
Below, Appellant,

v.

DELAWARE HARNESS RACING
COMMISSION, Appellee
Below, Appellee.

No. 25, 1999.

Supreme Court of Delaware.

Submitted: March 21, 2000.
Decided: May 11, 2000.

Jeffrey J. Clark, of Schmittinger & Rodriguez, Dover, Delaware, for appellant.

Michael F. McTaggart, of the Department of Justice, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice,
WALSH, HOLLAND, BERGER, Justices,
and JACOBS, Vice Chancellor,[1]
(constituting the Court en Banc).

HOLLAND, Justice, for the majority:

This is an appeal from a final judgment of the Superior Court. The Superior Court affirmed a decision by the appellee, Delaware Harness Racing Commission, that sanctioned the appellant, Joseph P. Dugan, for violating its trainer responsibility rules. This is Dugan's direct appeal.

Dugan argues that the Delaware State Harness Racing Commission committed legal error by sanctioning him on the basis of blood test results that the Commission's own rules provided would be given effect only if certain procedural safeguards were

1. Sitting by designation pursuant to Supreme Court Rule 2 and Del. Const. art. IV § 12.

in place. We have concluded that Dugan's position is correct. Accordingly, the judgment of the Superior Court is reversed.

### Facts

On February 1, 1998, Dugan entered a horse named "Night Time Goer" in the fourth race at Dover Downs Raceway and won. After the race, Night Time Goer underwent a random blood test. A split sample was extracted with one designated as the "primary sample" and the other as the "secondary sample."

Both samples of Night Time Goer's blood were transported for testing to the Commission's official laboratory, Dalare Associates. The chemist tested the primary sample and determined that the blood sample had a plasma carbon dioxide level of 40.3 millimoles per liter. The chemist then tested the secondary sample and the result was a plasma carbon dioxide level of 40.6 millimoles per liter. Each sample was tested in triplicate. The chemist testified that the levels indicated the administration of alkalizing salts to the horse.

On February 5, 1998, the State Steward received the test results from the official laboratory. The State Steward conducted an informal hearing and determined that Dugan had violated the Delaware State Harness Racing Commission's trainer responsibility rules by racing a horse whose carbon dioxide levels tested above the maximum level of 37 millimoles per liter. The State Steward then imposed upon Dugan a fifteen-day suspension, a disqualification from receiving the February 1, 1998 purse moneys, and a $150.00 fine.

Dugan appealed to the Commission from the State Steward's decision. He contended that Night Time Goer has a naturally high carbon dioxide level. At the hearing, Dugan introduced other tests results showing a high carbon dioxide level measured in milliequivalents. Dugan challenged the reliability of the testing conducted by the official laboratory on the basis that both samples were tested by the same chemist. Dugan testified that he had offered to quarantine the horse to prove it had a naturally high carbon dioxide level, but that he was unable to locate a racetrack in Delaware that could facilitate a quarantine procedure.

The Commission also heard testimony from the chemist who analyzed the samples of Night Time Goer's blood. He explained that due to the special nature of carbon dioxide testing and the rapid deterioration of carbon dioxide in a horse's blood, the laboratory did not send the secondary sample to be independently tested by another facility. The chemist further testified that the additional time it would take to transport the sample to another laboratory could cause inaccurate results.

After reviewing the evidence presented, the Commission concluded that Dugan violated the Commission's trainer responsibility rules by racing Night Time Goer on February 1, 1998 with a prohibited substance in the horse's blood system. The Commission stated that it was not persuaded by the test results offered by Dugan because: they were hearsay; there was no evidence of methods or reliability of the testing; the result was in milliequivalents not millimoles per liter; and there was no evidence that the standards used were the same. The Commission affirmed the State Steward's decision and the penalty imposed upon Dugan.

Dugan appealed to the Superior Court. The Superior Court affirmed the Harness Racing Commission's decision. The Superior Court granted a stay of its order during the pendency of this appeal.

### Evidentiary Rule Inoperative

Dugan argues that when the Commission promulgated a rule of evidence giving *prima facie* effect to the results of a scientific blood test, *but only* if the Commission enacted certain other procedures, the admission of such blood test evidence at his hearing constituted a denial of procedural due process because the Commis-

sion had not established the other procedures. The race at issue involving Dugan, took place on February 1, 1998. The Commission adopted the following rule of evidence on January 11, 1998:

> A finding by the official chemist of a prohibited drug, chemical or other substance in a test specimen of a horse, is prima facie evidence that the prohibited ... substance was administered to the horse. Prohibited substances include ... (c) ... a total carbon dioxide level of 37 mmol/L [millimoles per liter] ... provided that a licensee has the right, pursuant to procedures, to be established by the Commission, to attempt to prove that a horse has a naturally high carbon dioxide level in excess of the above-mentioned levels.[2]

The Commission's Register of Regulations Findings of Fact reflects that before this Rule was promulgated:

> The Commission received comments opposing the use of blood gas testing unless a fair procedure was employed. The Commission finds the proposed rule will provide for enforcement of the blood gas rule with a procedure that is fair to all licensees.

It is undisputed that whatever procedures the Commission contemplated establishing when it adopted this rule of evidence, there were no procedures in effect at the time of Dugan's alleged violation.

■ We assume that the Commission was not *required* by either the United States Constitution or by statute to adopt a *prima facie* rule of evidence that was conditioned on establishing certain other procedures.[3] Nevertheless, the United States Supreme Court has held that once

an agency does adopt such regulations, "it does not necessarily follow ... that the agency has no duty to obey them. 'Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'"[4] If an agency rule is designed "to afford ... due process of law by providing safeguards against essentially unfair procedures," the action which results from the violation of that rule is invalid.[5]

In this case, the record reflects that the Commission adopted a rule of evidence that was conditioned expressly upon its subsequent establishment of certain additional procedural safeguards. Those procedures were not extant at the time of Dugan's alleged violation. Therefore, the prohibition against racing a horse with a carbon dioxide level of 37 millimoles per liter or greater was inoperative and any blood test evidence of its violation was inadmissible. Consequently, all of the sanctions imposed on the basis of Dugan's alleged violation are invalid.[6]

### Secondary Blood Sample

Dugan's second and alternative argument on appeal is that the Commission's decision must be reversed because the official chemist failed to retain the secondary sample for independent testing by a different laboratory. The Commission's Rule regarding the use and testing of a secondary sample provides:

> [t]he "secondary" sample shall remain in the custody of the Commission veterinarian at the "detention area ..." If testing of the "secondary" sample is desired, the owner [or] trainer ... shall so notify the Commission in writing within 48 hours after notification of the initial

**2.** *Del. State Harness Racing Comm'n Rules,* Chap. 8, rule III.c .3(1).

**3.** *See United States v. Caceres,* 440 U.S. 741, 749–50, 751–52, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

**4.** *Id.* at 751 n. 14, 99 S.Ct. 1465. *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). *See e.g., United States ex*

*rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

**5.** *United States v. Caceres,* 440 U.S. at 749, 99 S.Ct. 1465.

**6.** *Id.*

positive test ... Testing of the "secondary" samples shall be performed at a referee laboratory selected by ... the trainer ... from a list of not less than two (2) laboratories approved by the Commission. If an act of God, power failure, accident, strike or other action beyond the control of the Commission occurs, the results of the primary official test shall be accepted as prima facie evidence.[7]

The record reflects that the same chemist, Dalare Associates, tested both the primary and secondary samples of Night Time Goer's blood. We have already concluded that, because the 37 millimole per liter standard never became operative by the time of the race that was won by Night Time Goer, the blood gas test results from the primary samples were inadmissible as evidence against Dugan. Consequently, we need not decide the issue presented by the Commission's failure to maintain the integrity of the secondary blood sample for testing by an independent laboratory.

### Conclusion

■■■ It is appropriate for an appellate court to direct the entry of judgment as a matter of law when it determines that evidence was erroneously admitted at a trial or hearing and that the remaining properly admitted evidence is insufficient to constitute a submissible case.[8] In this case, there is no evidence of a violation by Dugan because the standard he was charged with violating never became operative. Therefore, the judgment of the Superior Court is reversed. This matter is remanded for the entry of judgment in favor of Dugan by the Superior Court and the Commission.

BERGER, Justice, dissenting:

Before the rule at issue was amended in 1998, a carbon dioxide level "in excess of

levels at which such substance [ ] could occur naturally" was prima facie evidence that a prohibited substance was administered to the horse. In 1998, three weeks before the race in question, the rule was amended to specify the carbon dioxide level that would be considered excessive (above 37 mmol/L) and to provide a procedure by which the licensee could attempt to prove that his horse had a naturally high carbon dioxide level. The majority holds that the amended rule was inoperative because certain procedures identified in the rule had not been established at the time Dugan's horse was tested. If the amendment was inoperative, however, the original rule should control.[9]

Under the original rule, to establish a violation the State Steward would have to prove that the horse's carbon dioxide level was higher than a naturally occurring level. To rebut that showing, Dugan would have to prove that his horse's carbon dioxide level was naturally as high or higher than the tested level. There is record evidence to support both positions and there would be no unfairness if this Court remanded to the Commission with instructions that it review the record and decide this matter again under the old rule. To the extent that Dugan may wish to introduce more or different evidence, the Commission could reopen the record to accommodate him. This result would place Dugan in the same position he would have been in had the race in question been run a few weeks earlier, when the old rule was still in effect, and it would eliminate any due process concerns relating to the absence of new testing and quarantine procedures.

**7.** *See Del. State Harness Racing Comm'n Rules*, Chap. 8, rule IV–c.

**8.** *Weisgram v. Marley Company*, —— U.S. ——, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000).

**9.** *See: Clark v. State*, Del.Supr., 287 A.2d 660, 664 (1972).