# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SHAMINA YOUNG-ROGERS,      :
     :
     :     C.A. No. K23A-05-008 JJC
Appellant,      :
     :
v.      :
     :
DELAWARE DEPARTMENT OF      :
HEALTH AND SOCIAL SERVICES :
AUDIT AND RECOVERY,      :
     :
Appellee.      :
     :

Submitted: January 23, 2024
Decided:   April 11, 2024

## OPINION & ORDER

Shamina Young-Rogers, *Pro Se.*

Renee L. Hrivnak, Deputy Attorney General, Wilmington, Delaware, *Attorney for Delaware Department of Health and Social Services Audit and Recovery Management Services.*

**Clark, R.J.**

Appellant Shamina-Young-Rogers ("Ms. Young-Rogers") appeals a decision of the Department of Health and Social Services ("DHSS" or "the Agency"). In her appeal, she challenges the Agency's decision to disqualify her from the receipt of federally funded Supplemental Nutrition Assistance and Food Distribution Program ("SNAP") benefits. The Division of Audit and Recovery Management Services ("ARMS") investigated the matter and concluded that Ms. Young-Rogers committed an intentional program violation (an "IPV").[1] ARMS then presented the contention to a DHSS Hearing Officer who found that Ms. Young-Rogers committed an IPV because she failed to disclose that another individual resided in her household and earned income.[2]

Ms. Young-Rogers now appeals DHSS's decision. She contends that the Agency denied her the opportunity to participate in a meaningful hearing to contest her disqualification. She further contends that the other individual never lived in her home. In support, she offers documents on appeal to prove that he resided elsewhere.

Here, the Court's decision turns on whether the DHSS-provided hearing met requirements set by the federal regulations that controlled the Agency's actions. For the reasons below, it did not. Namely, DHSS offered her a telephonic hearing with no opportunity to submit documentary evidence on her behalf. As a result, the Agency's decision must be reversed with direction that the Agency provide her with a fair hearing where she is permitted to offer relevant evidence in her defense.

---

[1] 7 C.F.R. § 273.16(c) (providing that an intentional program violation occurs when an individual intentionally misrepresents, conceals, or withholds facts to facilitate the unlawful acquisition or use of SNAP benefits).

[2] Del. Dept. of Health and Soc. Serv. Audit & Recovery Management Services Proposed Administrative Disqualification, *Del. Dept. of Soc. Serv. v. Young-Rogers*, No. 9003371395 (Del. Dept. of Health and Soc. Serv. Apr. 21, 2023) [hereafter "Disqualification Decision"].

# I. PROCEDURAL BACKGROUND AND FACTS OF RECORD

SNAP is a federal program designed to alleviate hunger and malnutrition by providing food benefits to low-income individuals and families.[3] The federal government delegates the obligation to administer the program to state agencies. In Delaware, DHSS is the designated State-level agency.[4] ARMS, which identifies itself as a Division of DHSS, investigates potential SNAP program violations. It also initiates administrative proceedings against alleged violators.

The following facts are those contained in the administrative record below.[5] Ms. Young-Rogers has received benefits from SNAP since 2006.[6] Since then, she has submitted multiple renewal requests for food benefits and medical assistance.[7] In her 2019 and 2020 renewal forms, Ms. Young-Rogers represented that she resided at a house she owns in Magnolia with her three children.[8] In 2022, she applied to renew her benefits. At that point, she represented that she shared her household with only her niece and her three children.[9] She did not list Auburn Broadie, the father of the youngest of her three children, as a member of her household at any point between 2019 and 2023.

---

[3] U.S. DEP'T OF AGRIC. FOOD AND NUTRITION SERV., FACTS ABOUT SNAP (Jan. 24, 2024).

[4] *See* 31 *Del. C.* § 512 (recognizing that DHSS must cooperate with the federal government regarding any federal acts concerning public welfare and adopt methods to administer those programs in the State); *see also* 7 C.F.R. section 271.4 (itemizing a state agency's responsibilities when administering SNAP within the state).

[5] The record submitted by the agency is somewhat disorganized. The facts cited herein are from the testimony and exhibits introduced during the Administrative Disqualification Hearing which took place on March 3, 2023. *See* Tr. of Admin. Disqualification Hr'g, *Del. Dept. of Soc. Serv. v. Young-Rogers*, No. 9003371395 (Del. Dept. of Health and Soc. Serv. Mar. 3, 2023) [hereafter "Hr'g Tr."]. The exhibits ARMS introduced at the hearing are cited as "Hr'g Tr.," followed by their exhibit number.

[6] Hr'g Tr. Ex. 4.

[7] *Id.*; *see also* Hr'g Tr. Ex. 13.

[8] Hr'g Tr. Ex. 13.

[9] *Id.*

In 2019, Mr. Broadie separately submitted an application for public assistance with DHSS.[10] There, he represented that he lived at Ms. Young-Rogers' house in Magnolia by listing her address as his.[11] He claimed to be the sole member of that household.[12] Later, he completed and signed a six-month periodic report that confirmed that he remained at that address.[13] In that filing, he represented himself to be the only member of that household.[14]

Mr. Broadie did not apply for benefits again until 2021. At that point, he submitted a new application.[15] He again represented that he lived at Ms. Young-Rogers' house in Magnolia by, once again, identifying the home by address only.[16]

ARMS compared Mr. Broadie's 2022 application to Ms. Young-Rogers's application and identified the discrepancy. As a result, a case worker interviewed Mr. Broadie.[17] During the interview, Mr. Broadie contradicted his written representation that he was the sole member of his household.[18] Nevertheless, he confirmed that he lived with Ms. Young-Rogers and their mutual daughter in Ms. Young-Rogers' home.[19] ARMS then broadened the investigation by examining Ms. Young-Rogers' conduct because she had not disclosed that Mr. Broadie lived with her.

On January 10, 2023, ARMS sent Ms. Young-Rogers a written notice informing her that it had formally opened an investigation regarding a potential

---

[10] Hr'g Tr. Ex. 6.
[11] *Id.*
[12] *Id.*
[13] Hr'g Tr. Ex. 7.
[14] *Id.*
[15] Hr'g Tr. Ex. 8.
[16] *Id.* at 2.
[17] Hr'g Tr. Ex. 10.
[18] *Id.*
[19] *Id.*

IPV.[20]   In the letter, ARMS invited her to participate in a phone interview to discuss the disqualification process, the availability of a hearing, and her options.[21]   The letter also informed Ms. Young-Rogers that she need not participate in the interview, and that if she chose not to, she would retain the right to dispute her disqualification at a later hearing.[22]   Finally, ARMS' letter explained that ARMS would present evidence to a Hearing Officer and request that she be disqualified from receiving SNAP benefits at the hearing.[23]

On January 17, 2023, ARMS Investigator Jean Cenicola spoke with Ms. Young-Rogers by phone.[24]   According to the investigator, Ms. Young-Rogers acknowledged that she and Mr. Broadie had an amicable relationship and that he visited their daughter every other weekend.[25]  Ms. Young-Rogers denied, however, that Mr. Broadie lived with her.[26]  Ms. Young-Rogers contends that the investigator told her that the hearing could only be conducted by telephone,[27] which the administrative record confirms.[28]   Finally, the investigator informed her that she could nevertheless review ARMS' evidence before the hearing.[29]

DHSS then issued its formal hearing notice that set her case for a telephonic hearing.[30]  Neither the hearing notice nor the investigator explained how Ms. Young-Rogers could present documentary evidence on her own behalf during such a

---

[20] Hr'g Tr. Ex. 2.
[21] *Id*.
[22] *Id*.
[23] *Id*.
[24] Hr'g Tr. at 18:2–5.
[25] *Id*. at 18:6–10.
[26] *Id*. at 18: 5–6.
[27] Reply Br. (D.I. 19).
[28] *See* Hr'g Tr. Ex. 1 at 4 (letter from DHSS to a USDA Senior Program Specialist) (discussing the fact that because of the COVID-19 pandemic, all hearings have been changed to telephonic).
[29] Hr'g Tr. at 10:2–12.
[30] Notice of Administrative Disqualification Hearing Date and Time, Del. Dept. of Health and Soc. Serv., to Shamina Young-Rogers (Jan. 30, 2023) [hereafter "Hearing Notice"].

hearing. Nor did they explain how she could review ARMS' documentary evidence during the hearing.

The DHSS hearing occurred on March 3, 2023,[31] but Ms. Young-Rogers did not participate. The transcript reflects that the Hearing Officer attempted to call Ms. Young-Rogers twice and received no answer.[32] He then conducted the hearing without her. As a result, ARMS Investigator Cenicola, who administratively prosecuted the matter, submitted the only evidence of record.[33]

The record included testimony and documents demonstrating that Mr. Broadie submitted three benefit applications between 2019 and 2022 and an interim report that identified Ms. Young-Rogers' home as his.[34] The record also demonstrates that Ms. Young-Rogers submitted a benefit renewal request in 2022 and did not list Mr. Broadie as a household member.[35] Furthermore, ARMS submitted evidence at the hearing from Accurint[36] searches that, at best, supported an inference that both Mr. Broadie and Ms. Young-Rogers may have lived at the same Magnolia home in 2022.[37] Finally, the Hearing Officer relied upon ARMS' documentary evidence that Mr. Broadie earned income that Ms. Young-Rogers' did not disclose.[38]

The Hearing Officer's written decision followed.[39] He found that Ms. Young-Rogers committed an IPV.[40] As a result, DHSS disqualified Ms. Young-Rogers from receiving SNAP benefits for twelve months.[41] He explained that 7 CFR §

---

[31] *Id.* at 6: 20–24.
[32] Hr'g Tr. at 6:14–19.
[33] *Id.*
[34] Hr'g Tr. Exs. 6-9.
[35] Hr'g Tr. Ex. 13.
[36] Accurint is a service offered by LexisNexis which provides organizations with background and residence data extracted from a wide range of public and private sources.
[37] Hr'g Tr. Ex. 14, 15.
[38] Hr'g Tr. Ex. 12.
[39] Disqualification Decision.
[40] *Id.* at 5.
[41] *Id.* at 6.

273.12(a)(1)(ii) required Ms. Young-Rogers to update DHSS if her household composition changed.[42]   The Hearing Officer found that she had misrepresented her household composition multiple times over a three-year span.[43]   As a result, he found that she committed a single IPV pursuant to 7 CFR § 273.16(c) for her multiple misrepresentations and omissions.[44]   Ms. Young-Rogers now appeals DHSS's decision to this Court.[45]

## II.    THE PARTIES' CONTENTIONS

In Ms. Young-Rogers' appeal, she contends that DHSS erred by finding that Mr. Broadie resided in her household.[46]   She further contends that Mr. Broadie used her address to procure food stamps in Delaware while he resided in Maryland without her knowledge or consent.[47]   In her briefing, she includes several documents that she did not submit in the hearing below.[48]   She contends that those documents prove that Mr. Broadie did not live with her during any of the years in question.[49]

Ms. Young-Rogers concedes that she had sufficient notice of the hearing date and time.[50]   She nevertheless contends that she could not attend the telephonic hearing because she had no phone service.[51]    In other words, she contends that it

---

[42] Disqualification Decision at 4.
[43] *Id.* at 5.
[44] *Id.*
[45] Appellant's Notice of Appeal (D.I. 1).
[46] Opening Br. (D.I. 13).
[47] D.I. 19.
[48] *Id.*, Ex. 1–5. These exhibits include, *inter alia*, several background check authorizations listing addresses for herself and Mr. Broadie; mail sent to her by DHSS at her address *in Dover* in 2019 and 2020; mail addressed to Mr. Broadie at his alleged address in Maryland; mail sent by the Wicomico County, *Maryland* Board of Elections to Mr. Broadie in 2022; and Mr. Broadie's Form 1099-R and W-2 tax statements for 2022, both of which were sent to Mr. Broadie's alleged address in Maryland.
[49] D.I. 13.
[50] D.I. 19.
[51] *Id.*

was not her fault that she could not participate. She asks the Court to reverse DHSS's decision, or to alternatively remand the case to the Agency to hold another hearing to provide her with the opportunity to prove that Mr. Broadie did not live with her.[52] More specifically, she requests what is referred to as a "fair hearing" in the SNAP regulations.[53] She further requests that the Court assign her legal counsel to assist with her case because of her disability.[54]

ARMS contends that Ms. Young-Rogers received a fair hearing. It also contends that there is substantial evidence in the record to support the Hearing Officer's finding that she committed an IPV on two bases.[55] Namely, ARMS contends that when she applied for SNAP, she (1) deliberately failed to identify Mr. Broadie as a member of her household in 2022, and (2) deliberately failed to report his income that year.[56] In support, ARMS relies upon the exhibits and testimony that its investigator submitted at the hearing. That evidence included: comprehensive Acccurint reports for Ms. Young-Rogers and Mr. Broadie showing that both parties *may* have resided at the Magnolia address between May 2018 and November 2022;[57] a case summary and food benefit issuance report for Mr. Broadie;[58] applications for benefits filed by Mr. Broadie using the Magnolia address in 2019, 2021, and 2022;[59] wage statements for Mr. Broadie showing income he received from 2018 through

---

[52] D.I. 1.

[53] *Id.*; *see* 7 C.F.R. § 271.7(a) ("Except as provided in § 271.7(f), each State agency shall provide a fair hearing to any household aggrieved by any action of the State agency which affects the participation of the household in the Program.").

[54] D.I. 1. The Court will not further address Ms. Young-Rogers' request that it appoint her legal counsel because the Court is unable to appoint counsel on her behalf. The Hearing Notice notified her of her ability to contact Community Legal Aid for potential representation, however, and she remains able to do so pending the remand.

[55] D.I. 15 at 16.

[56] *Id.* at 13, 16.

[57] Hr'g Tr. Ex. 14, 15.

[58] Hr'g Tr. Ex. 4.

[59] Hr'g Tr. Ex. 6–9.

2022;[60] and two address information requests sent to USPS by ARMS, offered to show that Mr. Broadie had moved from the Maryland address during the relevant times that Ms. Young-Rogers contends he lived in Maryland.[61]

ARMS also stresses that Ms. Young-Rogers did not participate in the hearing and therefore offered no evidence to contradict ARMS's evidence.[62]   ARMS maintains that the administrative hearing was the only venue where she could offer facts to contest her disqualification.[63]   To that end, ARMS relies on a basic principle of administrative law:  an aggrieved party cannot expand the record on appeal.[64]

Finally, ARMS concedes in its Answering Brief that there is conflicting evidence as to *where Ms. Young-Rogers lived* during the first two of the three years of her disputed benefit payments.[65]  Accordingly, ARMS acknowledges that there is not substantial evidence in the record to support DHSS's findings that she committed an IPV during those two years.[66]   Nevertheless, ARMS maintains that there is substantial evidence to support that she and Mr. Broadie lived together in the same household in August 2022, and that she falsely represented that he did not.[67]

## III.   SCOPE AND STANDARD OF REVIEW

The Court's scope of review in this matter is controlled by 31 *Del. C.* § 520 ("Section 520").   Section 520 provides that recipients of public assistance may

---

[60] Hr'g Tr. Ex. 12.
[61] Hr'g Tr. Ex. 11.
[62] D.I. 15 at 14.
[63] *Id.*
[64] *Id*.
[65] *Id.* at 15.
[66] *Id.* at 15. Ms. Young-Rogers' two benefit renewal applications from 2019 and 2020 list her address as one in Dover, rather in Magnolia.  Additionally, the Accurint Report for Mr. Broadie shows Mr. Broadie as having lived at two addresses in Maryland and one address in Florida during the relevant time periods, which overlap with the time-period he is alleged to have lived at Ms. Young-Rogers' address in Magnolia, Delaware.
[67] *Id.*

appeal DHSS's decision to the Superior Court if they (1) are subject to an adverse DHSS decision regarding their entitlement to benefits and (2) suffer financial harm as a result.[68] The appeal must be filed within 30 days of the final administrative decision and "shall be on the record without a trial *de novo*."[69]

Section 520 further provides that the Court's role on appeal is to "decide all relevant questions and all other matters involved, and [to] sustain any factual findings of the administrative hearing decision that are supported by substantial evidence on the record as a whole."[70] When determining whether there was substantial evidence to support the Agency's decision, the Court must review the record while recognizing the heightened burden of proof placed upon ARMS below: clear and convincing evidence.[71]

Delaware DHSS-appeal-specific case law provides the same benchmarks. Namely, the Delaware Supreme Court has explained that "the reviewing court must determine whether [DHSS's] ruling is supported by substantial evidence and free from legal error."[72] Evidence is substantial if a reasonable mind might accept such evidence as adequate to support the conclusion reached.[73] Questions of law, on the other hand, are reviewed *de novo*.[74]

---

[68] 31 *Del. C.* § 520.

[69] *Id.*

[70] *Id.*

[71] *See* 7 C.F.R. § 273.16(e)(6) (requiring DHSS to base its determination regarding IPVs "on clear and convincing evidence which demonstrates that the household member(s) committed, and intended to commit, intentional Program violations.").

[72] *Prunckun v. Delaware Dept. of Health and Soc. Serv.*, 201 A.3d 525, 540 (2019).

[73] *Id.*; *see also Ringgold v. Del. Dept. of Health and Soc. Serv.*, 2018 WL 7021956, at *1 (Del. Super. July 27, 2018) ("The Court is not to replace the trier of fact in an appeal of an administrative board decision.").

[74] *Prunckun*, 201 A.3d at 540.

## IV. ANALYSIS

SNAP is a federal nutritional assistance program supported with primarily federal dollars. As a result, federal regulations controlled the central aspects of Ms. Young-Rogers' hearing below and control the disposition of this appeal.[75] They define what conduct disqualifies her from receiving benefits, the notice she was due, the nature of the administrative hearing that DHSS needed to provide to her, and the appropriate penalty if she committed an IPV.[76]

As an overview, DHSS committed legal error because her hearing violated federal regulations by not providing her a means to present documentary evidence in her defense. As a result, the Court declines to address whether the record contained substantial evidence to support DHSS's findings because the structure of the hearing offered to Ms. Young-Rogers was fundamentally unfair.

Ms. Young-Rogers challenges the Agency's disqualification decision based upon her IPV. Federal regulation defines an IPV as follows:

[i]ntentional [p]rogram violations shall consist of having intentionally:

1.  Made a false or misleading statement, or misrepresented, concealed or withheld facts; or
2.  Committed any act that constitutes a violation of SNAP, SNAP regulations, or any State statute for the purpose of using, presenting, transferring, acquiring, receiving, possessing, or trafficking of SNAP benefits or EBT cards.[77]

Here, ARMS sought to prove to the Hearing Officer that Ms. Young-Rogers made false and misleading representations repeatedly over three years. On appeal, ARMS concedes that the evidence below did not support the Hearing Officer's

---

[75] *See Gonzalez v. State*, 207 A.3d 147, 149 (Del. 2019) (recognizing that federal law governs the Agency's administration of the SNAP program in Delaware). In fact, federal law's preemption of the issue is so pervasive, it preempts any State law civil fraud claim by DHSS against a benefits recipient. *Id.* at 154.

[76] 7 C.F.R. §§ 271.1–285.5.

[77] 7 C.F.R. § 273.16(c)

11

finding that her conduct during the first two of the three years constituted an IPV. Notwithstanding this concession, ARMS emphasizes that the penalty would be the same regardless of whether the misrepresentations spanned three years or one year. Namely, a first IPV requires a one-year disqualification of benefits regardless of the bases for the IPV.[78]

The Agency proceeded to administratively consider Ms. Young-Rogers' disqualification. It had the option to either refer the matter for criminal charges in a court of appropriate jurisdiction or to proceed administratively.[79] When the Agency elected to proceed with an administrative hearing, it assumed the obligation to "conduct [a] hearing, arrive at a decision, and notify the household member . . . of the decision."[80]

The central question is how much process was due Ms. Young-Rogers. The United States Department of Agriculture ("USDA") answered that question when adopting the controlling regulations. At the outset, an agency that lawfully adopts a regulation must follow its own regulations.[81] Stated differently, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."[82] This rule applies equally in this case because the USDA regulations at issue bind DHSS.[83] If an agency action violates a regulation promulgated to

---

[78] 7 C.F.R. § 273.16(b)(1)(i).

[79] *Gonzalez*, 207 A.3d at 150; *see also* 7 C.F.R. §273.16(a)(recognizing that the Agency has an either/or choice). Notably, DHSS's hearing notice fails to comply with the regulation or the Delaware Supreme Court's decision in *Gonzalez*. DHSS incorrectly states that its decision to proceed administratively against Ms. Young-Rogers does not bar State criminal prosecution. As recognized in *Gonzalez*, it does. *Gonzalez*, 207 A.3d at 150.

[80] 7 C.F.R. § 273.16(e)(2).

[81] *Dugan v. Del. Harness Racing Com'n*, 752 A.2d 529, 531 (Del. 2000) (citing United States v. Caceres, 440 U.S. 741, 749 (1979)).

[82] *Norwood v. Roxana Volunteer Fire Company*, 2019 4267416 (Del. Super. Sept. 9, 2019) (citing Dugan, 753 A.2d at 531).

[83] *Gonzalez v. State*, 207 A.3d at 149.

ensure due process through procedural safeguards, the agency's action is invalid.[84] Notably, agencies are free to promulgate regulations requiring procedural safeguards that extend beyond constitutional due process requirements.[85] Once they do, they, or an agency with the delegated responsibility to apply those regulations, cannot disregard them.[86] In this case, the federal regulations that bind DHSS's actions guaranteed Ms. Young-Rogers a "fair hearing" to contest her disqualification.[87] Those regulations further define what constitutes a "fair hearing" by including the procedural protections necessary to provide her with meaningful hearing.[88]

At the outset, the SNAP regulatory scheme provides for a two-tiered administrative hearing process – a "disqualification hearing," and a subsequent "fair hearing."[89] The controlling regulations permit an agency, such as DHSS, to combine a disqualification hearing and a fair hearing into a single hearing provided the agency provides the higher level of protections in the combined hearing.[90] In this case, DHSS permissibly offered Ms. Young-Rogers only one hearing and treated it as a fair hearing.[91] When doing so, DHSS met the notice requirements set by regulation.[92] Accordingly, the Court's focus turns to whether DHSS complied with the regulations meant to ensure that Ms. Young-Rogers had a meaningful hearing.

In this case, the investigator informed Ms. Young-Rogers that her hearing would proceed telephonically and that she could arrange to view the evidence against

---

[84] *Dugan*, 752 A.2d at 531.
[85] Id.
[86] Id.
[87] 7 C.F.R. § 273.15(a).
[88] *See* 7 C.F.R. § 273.15(i), (l), (m), (p), and (q) (providing DHSS's responsibilities in the hearing, specifying notice requirements, placing requirements on the Hearing Officer, specifying Ms. Young-Rogers' rights during the hearing, and itemizing the requirements for a final agency decision).
[89] 7 C.F.R. § 273.15(a), § 273.16(a).
[90] 7 C.F.R § 273.16(e)(1).
[91] *See* Disqualification Decision (stamped with "Fair Hearings April 21, 2023").
[92] 7 C.F.R. § 273.16(e)(3)(iii).

her before the hearing.[93]   Separately, DHSS's hearing notice informed Ms. Young-Rogers of the following:

> [a]n Administrative Disqualification Hearing telephone hearing has been scheduled for you. The Hearing Officer (HO) will call you at the telephone number we have on record for you as the date and time specified below. . . . If you fail to answer the phone, the hearing will continue and a decision will be made based on the information provided by ARMS.[94]

Ms. Young-Rogers contends that she requested a live hearing during the ARMS interview, but the investigator told her that DHSS would not accommodate the request.[95]   DHSS does not contest that assertion.  The record further confirms that DHSS provided her no option for an in-person hearing.[96]   The record also confirms that DHSS put no procedures in place that would have enabled Ms. Young-Rogers to present documentary evidence in her defense.[97]   Namely, ARMS submitted an emailed opinion from an attorney into the hearing record.[98]   The attorney opined that DHSS's decision to provide only telephonic hearings during the pandemic complied with federal regulations because DHSS provided respondents the right to testify orally, cross-examine witnesses, and view the evidence prior to the hearing.[99]

---

[93] Hr'g Tr. at 10:2–12.

[94] Hearing Notice.  Of note, the notice identified the upcoming hearing as a "disqualification hearing."  The Disqualification Decision, however, had "Fair Hearing" stamped on it.

[95] D.I. 19.

[96] See Hr'g Tr. Ex. 1 at 4 (letter from DHSS to a USDA Senior Program Specialist (discussing the fact that because of the COVID-19 pandemic, all hearings have been changed to telephonic).

[97] See Hearing Notice. While the hearing notice provided that Ms. Young-Rogers would be "given a chance to provide evidence of all important facts and circumstances of [her] case," the notice did not identify any mechanism by which Ms. Young-Rogers could submit documentary evidence for the Hearing Officer to review.

[98] Hr'g Tr. Ex. 1.

[99] See id. ("The regulation does not state that the client has to be sent the exhibits in order for the hearing to go forward, merely that they be given 'adequate opportunity' to do so.  The State Agency … is required to notify the client of their rights and responsibilities and to offer them the chance

The hearing structure offered to Ms. Young-Rogers violated four regulatory requirements promulgated to ensure respondents like her received due process.[100] First, 7 C.F.R § 273.15 required that the hearing be structured so as to permit the Hearing Officer to "[r]equest, **receive,** and make part of the record all evidence determined necessary to decide the issues being raised."[101] Here, the Agency offered a hearing with no means for Ms. Young-Rogers to introduce documentary evidence in her defense. It follows directly that there were no means available for the Hearing officer to **receive** such evidence.

Second, the record required the Hearing Officer to "[i]nsure that all relevant issues are considered [and to] [r]egulate the conduct and course of the hearing consistent with due process."[102] DHSS did not provide, and the Hearing Officer did not oversee, a hearing that enabled the Hearing Officer to consider all relevant issues. The one-sided hearing included ARMS' submission of many documents and a near total reliance on hearsay.[103] In contrast, DHSS's procedures offered Ms. Young-Rogers, as a lay person, no mechanism to submit her own documentary evidence.

Third, and separately, the regulations guaranteed Ms. Young-Rogers the right to **"[s]ubmit evidence** to establish all pertinent facts and circumstances in the

---

to examine the information prior to the hearing and to have the information available to them during the hearing.").

[100] Frankly, in this case, the record demonstrates another possible procedural infirmity that the Court declines to address both upon grounds of restraint and waiver because Ms. Young-Rogers she did not participate in the hearing. *See Ortiz v. Eichler*, 794 F.2d 889, 895–96 (3d Cir. 1986) (explaining that while hearsay evidence is generally admissible in administrative hearings, 7 C.F.R § 273.15(p)(5) precludes consideration of adverse statements from declarants who were not available for cross-examination at hearings).

[101] 7 C.F.R.§ 273.15(m)(2)(iii) (emphasis added).

[102] 7 C.F.R.§ 273.15(m)(2)(iv).

[103] *See Husbands v. Del. Dept. of Educ.*, 227 A.3d 558, 2020 WL 1814045, at *3 (Del. Apr. 7, 2020) (TABLE) ("It is well settled in Delaware that hearsay evidence is permissible in administrative hearings, so long as that evidence is not the sole basis for the hearing officer's decision.").

case."[104]  Again, while the telephonic hearing provided her the ability to testify and DHSS's procedures provided her a notional opportunity to review ARMS' evidence prior to the hearing, DHSS's hearing procedure deprived her of a critical right guaranteed by the regulation – the opportunity to offer evidence to support her defense.[105]

Fourth and finally, the regulations guaranteed Ms. Young-Rogers the ability to examine all documents and records considered at the hearing at a reasonable time, both before the date of the hearing, "**as well as during the hearing**."[106]  DHSS's hearing procedure provided no mechanism to permit her to view the evidence offered during the hearing.

The unfair prejudice to Ms. Young-Rogers is further aggravated in this case because Ms. Young-Rogers had documentary evidence available to support her defense.[107]  Although she did not participate in the phone hearing, the result in this case is no different.  Namely, the Agency presented her with one hearing option – a hearing procedure that did not meet the abovementioned requirements.   From the beginning, DHSS informed her that she would, in essence, have no right to a fair hearing as defined in the regulations.  Accordingly, her inability to participate in what was a procedurally deficient telephonic hearing does not estop her from challenging the basic fairness of the only hearing offered her.

---

[104] 7 C.F.R. § 273.15(p)(6) (emphasis added).

[105] *See* 7 C.F.R. § 273.15(p)(6) (providing that during a fair hearing, a household has the right to "submit evidence to establish all pertinent facts and circumstances in the case.")

[106] 7 C.F.R. § 273.15(p)(1) (emphasis added).

[107] The Court recognizes its limited jurisdiction on appeal, and that it cannot consider the evidence Ms. Young-Rogers submits for the first time on appeal to weigh the sufficiency of the evidence. Nevertheless, given the hearing structure provided to her, the Court cannot ignore that much of the documentary evidence she asks the Court to consider would support her defense that Mr. Broadie did not live with her during the relevant periods.  DHSS should have provided her a hearing with a mechanism to consider sicj evidence, particularly given ARMS burden to prove its case by clear and convincing evidence.

As a final observation, ARMS concedes that DHSS based its decision to disqualify Ms. Young-Rogers on insufficient evidence as to two of the three years that formed the basis for the decision. This concession does little to alleviate the Court's concern regarding the fairness of her hearing. In the one-sided hearing below, the Hearing Officer found an IPV based in large part upon those two years of alleged conduct. Where ARMS now concedes there was not substantial evidence to support a significant part of the Agency's findings, the concession reinforces the need for another hearing.

In summary, the regulations cited above defined the process due Ms. Young-Rogers. When DHSS failed to provide her a hearing that complied with those regulations, it failed to provide her a meaningful hearing.[108] She must have a full and fair hearing with the chance to present documentary evidence to support her defense.

## V. CONCLUSION

As explained above, DHSS's disqualification decision must be **REVERSED** as to Hearing Officer's findings that Ms. Young-Rogers committed an IPV during the first two years. ARMS concedes a lack of substantial evidence in the record to support such a finding. The balance of DHSS's decision as to the third-year alleged misrepresentations must be **REVERSED and REMANDED**. DHSS shall provide Ms. Young-Rogers a full and fair hearing that provides her the opportunity to (1)

---

[108] As a final note, nothing in this decision should be read to prohibit an agency from conducting a telephonic or virtual hearing, provided the agency provides adequate measures to permit a respondent to submit documentary evidence on his or her own behalf and otherwise complies with controlling regulations and due process requirements. In the telephonic context, however, it is markedly more difficult to do so, particularly if the respondent is a self-represented litigant. Nevertheless, whether DHSS ultimately provides Ms. Young-Rogers a telephonic hearing, a virtual hearing, or an in-person hearing, it must provide her with a reasonable procedure that permits her to submit documentary evidence on her behalf.

present documentary evidence in her defense,  and (2) review ARMS' evidence during the hearing.  While her rehearing is pending, SNAP regulations mandate that DHSS cannot interrupt an individual's or household's benefits.[109]  Accordingly, DHSS shall reinstate Ms. Young-Rogers' SNAP benefits forthwith pending her fair hearing.  Jurisdiction is not retained.

      **IT IS SO ORDERED**.


/s/Jeffrey J Clark
Resident Judge

*Via File & ServeXpress*
*U.S. Mail to Appellant Shamina Young-Rogers*

---

[109] *See* 7 C.F.R. § 273.16(e)((5) ("A pending disqualification hearing shall not affect the individual's or the household's right to be certified and participate in the Program . . .. [T]he State agency cannot disqualify a household member for intentional Program violation until the hearing official finds that the individual has committed [an] intentional Program violation . . .")